UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

                                  Plaintiff,                              REPORT AND
                                                                                        RECOMMENDATION

        -against-

                                                                                                      06-CV-3247 (NG)

ONE HUNDRED FORTY THOUSAND
DOLLARS *in United States currency, and
all proceeds traceable thereto,*

                                 Defendants *in rem*,

ALI KHALIL, et al.,

                                  Claimants.
------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

       Claimants Ali Khalil, London Boy Sportswear Ltd., London Boy Sportswear on Third Avenue Corp., and Michael Fashions, Inc. (collectively "claimants"), move to dismiss a civil forfeiture complaint filed in connection with the government's seizure of United States currency totaling $140,000 from Ali Khalil ("Ali") and his brother Mohammed Khalil ("Mohammed") in September 2005; claimants also seek release of the funds based on the government's alleged violation of its statutory obligations. The government opposes claimants' motion, which the Honorable Nina Gershon referred to the undersigned magistrate judge for a Report and Recommendation. For the reasons that follow, the Court recommends that claimants' motion be denied without an evidentiary hearing.

## FACTUAL BACKGROUND

       The forfeiture complaint in this case arises out of two seizures of currency on the basis of information from a confidential source indicating that the currency constituted narcotics

proceeds about to be laundered. See Compl. at ¶ 9. On September 21, 2005, Mohammed was stopped for a traffic violation while driving through Queens, New York. See id. at ¶ 10. After receiving Mohammed's consent to search the car, authorities discovered and seized $70,000. Id. at ¶¶ 12, 14. The following day, agents confronted Ali outside Mohammed's house and seized an additional $70,000. Id. at ¶¶ 15, 17–18.

Under the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106–185, 114 Stat. 202 ("CAFRA"), the government was obligated to provide the Khalils administrative notice of the seizures within sixty days of the September 2005 seizures. See 18 U.S.C. § 983(a)(1)(A)(i). However, pursuant to 18 U.S.C. § 983(a)(1)(B), on October 14, 2005, John Hieronymous, forfeiture counsel with the Drug Enforcement Administration ("DEA"), authorized a thirty-day extension of the notice deadline, citing certain justifications specifically provided for in the statute. See Declaration of John Hieronymous dated December 18, 2006 ("Hieronymous Declaration"),[1] at ¶ 4.

On December 20 and 21, 2005, the government sent Ali administrative notices of the seizures. On January 6, 2006, Ali filed a claim for the seized cash; under CAFRA, that claim should have triggered, within ninety days, the government's commencement of a civil forfeiture action via the filing of a civil forfeiture complaint. See 18 U.S.C. § 983(a)(3)(A). Instead, the government filed, ex parte and under seal, a request for a ninety-day extension of this filing deadline, citing the need to protect an ongoing criminal investigation. See [Sealed] Declaration of AUSA Laura D. Mantell In Support of Motion For Extension of Time to File

---

[1] The Hieronymous Declaration was docketed as ECF document #40-4.

Complaint for Forfeiture ("Sealed AUSA Declaration").[2]  The Honorable Raymond J. Dearie granted the government's request and extended the deadline until July 3, 2006.  See 3/28/06 Order of Judge Dearie.[3]  On June 30, 2006, the government filed its forfeiture action, which was subsequently reassigned to Judge Gershon and this magistrate judge, who were presiding over a related return-of-property case previously commenced by Ali.  See Khalil v. United States, 06-CV-2638 (NG) (E.D.N.Y.).

**DISCUSSION**

Claimants seek release of their funds and dismissal of the government's forfeiture complaint on the ground that the government failed to comply with two statutory deadlines imposed by CAFRA: the deadline for providing administrative notice, as well as the deadline for filing the forfeiture complaint.  See Motion of Ali Khalil and the Corporate Claimants to Dismiss Forfeiture Complaint, Request for Evidentiary Hearing and Incorporated Memorandum of Law ("Cl. Mem."),[4] at 7, 9, 12.  Although claimants have denominated their motion as one "to dismiss," id. at 1, both sides have submitted materials extrinsic to the complaint, and neither has objected to the Court's consideration of extra-pleading materials.  Under the circumstances presented, the Court is entitled to consider those materials.[5]

---

[2] At Judge Gershon's direction, a redacted copy of the Sealed AUSA Declaration has been docketed as ECF document #33.  The unredacted copy remains under seal under miscellaneous docket number 06-146, and has been reviewed by this Court.

[3] A copy of Judge Dearie's order appears as docket entry #34.

[4] Claimant's memorandum of law was docketed as ECF document #40.

[5] A challenge to a complaint as time-barred is ordinarily characterized as a motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.
(continued…)

**I.    Notice of Seizure**

CAFRA provides that except in circumstances not present here, when the government seizes and seeks to confiscate property, the government is required to send written notice to interested parties "as soon as practicable, and in no case more than 60 days after the date of the seizure." 18 U.S.C. § 983(a)(1)(A)(i).  Nevertheless, in order to avoid certain "adverse result[s]," a "supervisory official" within the seizing agency may authorize the enlargement of this period by an additional thirty days.  See 18 U.S.C. § 983(a)(1)(B), (D).  If the government fails to provide notice within the requisite period, "the Government shall return [non-contraband] property . . . without prejudice to the right of the Government to commence a forfeiture proceeding at a later time." 18 U.S.C. § 983(a)(1)(F).

Claimants argue that the DEA, in granting the thirty-day extension in this case, failed to satisfy the requirements imposed by CAFRA in connection with such extensions.  According to claimants, the extension granted was ineffective, the government thus did not provide proper

---

[5](…continued)
See Ghartey v. St. John's Queens Hosp., 896 F.2d 160, 162 (2d Cir. 1989); United States v. $1,073,200.00 in U.S. Currency, No. 5:06-CV-578(NAM/GJD), 2007 WL 1017317 at *2 (N.D.N.Y. Mar. 30, 2007) (motion to dismiss based on government's failure to meet CAFRA's filing deadline); United States v. Flake, 783 F.Supp. 762, 764 (E.D.N.Y. 1992). Ordinarily, when faced with a Rule 12(b)(6) motion, a court must either refrain from considering extrinsic evidence or, upon notice to the parties, convert the motion to dismiss into one for summary judgment on the same issue.  See Flake, 783 F.Supp. at 764.  However, where, as here, the complaint itself incorporates or refers to specific documents, see Compl. at ¶¶ 19, 23 (asserting that extensions of the notice and filing deadlines were obtained), the court may consider those documents in deciding a Rule 12(b)(6) motion.  See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (district court was entitled to consider extrinsic evidence submitted with defendants' Rule 12(b)(6) motion without converting the motion into one for summary judgment, because plaintiffs had notice of the documents' contents, which were integral to their claim).

4

notice within sixty days of the seizure, and the funds must be returned and the complaint dismissed. See Cl. Mem. at 12 (requesting both remedies); but see Transcript of 11/13/06 Pre-Motion Conference at 9 (claimants' counsel states that the remedy for failure to provide notice is "the immediate return of property. That doesn't warrant dismissal of the forfeiture action."); Cl. Mem. at 6, 7 (the appropriate remedy for a notice violation is return of the property).

### A. "Supervisory Official"

Claimants first attack the extension on the ground that it was not approved by a "supervisory official" within the meaning of the statute. Cl. Mem. at 7. The record reflects that, as DEA forfeiture counsel, John Hieronymous supervises a team of thirteen DEA attorneys and support staff, that he routinely handles requests for notice extensions of the kind at issue in this case, and that the DEA Agent's Manual specifically provides that final approval for such extensions must be secured from the "Forfeiture Counsel or his designee . . . ." Hieronymous Decl. at ¶¶ 1–2; see The Government's Memorandum of Law in Opposition to Claimants' Motion to Dismiss ("Govt. Mem."),[6] at 5–6. Claimants provide no proof to the contrary and, indeed, cite further evidence that the DEA forfeiture counsel is authorized to approve notice extensions, albeit "with the concurrence of the Assistant Special Agent in Charge." Cl. Mem. Ex. D at 2.[7] Contrary to claimants' assertion, the government has in fact

---

[6] The government's memorandum of law was docketed as ECF document #40-3.

[7] Claimants' Exhibit D, which was docketed as part of ECF document #40-2, is a 2001 memorandum entitled "Perspectives on CAFRA," written by Special Agent Richard Shields, DEA Office of Training, Specialized Training Unit.

submitted evidence that Hieronymous approved the deadline extension in this case after reviewing "written requests that were made by a DEA Group Supervisor, through his Special Agent in Charge," to extend the notice period. See Hieronymous Decl. at ¶ 4.[8] Thus, the government appears to have obtained the approval of a person on the "operational side of the DEA." See Ali Khalil and the Corporate Claimants' Reply to the Government's Memorandum of Law in Opposition to Claimants' Motion to Dismiss ("Cl. Reply"), at 4.[9] Consequently, even applying claimants' own standard, the government has established that the extension was approved by a "supervisory official," and this aspect of claimants' challenge must fail.

### B. Basis for Decision to Extend the Notice Deadline

Claimants further attack the extension of the notice period on the ground that it was not justified by any of the circumstances contemplated by the statute. See Cl. Mem. at 8. The government responds that the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), does not provide for judicial review of the DEA's discretionary decision to defer notice, and, in the alternative, that the agency's justification for the extension was sufficient under the statute. See Govt. Mem. at 7–9.

Even assuming arguendo that the DEA's decision is reviewable, the record reveals sufficient justification for the extension. CAFRA provides that

---

[8] After the pending motion was fully submitted, this Court directed the government to submit ex parte, for in camera inspection, the internal DEA documents relating to Hieronymous's decisions to extend the notice deadlines. See 2/27/07 Calendar Order. The government complied on March 2, 2007, in a submission reviewed by the Court and filed under seal (hereinafter "Ex Parte Submission"). The Ex Parte Submission confirms the facts asserted in the Hieronymous Declaration.

[9] Claimants' reply memorandum was docketed as ECF document #40-5.

6

> The period for sending notice under this paragraph may be extended only if there is reason to believe that notice may have an adverse result, including--
> (i) endangering the life or physical safety of an individual;
> (ii) flight from prosecution;
> (iii) destruction of or tampering with evidence;
> (iv) intimidation of potential witnesses; or
> (v) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

18 U.S.C. § 983(a)(1)(D).

Claimants fault the government for having allegedly failed to address any of the adverse consequences enumerated in the statute. See Cl. Mem. at 8. However, the internal DEA documents submitted for in camera inspection do in fact cite one or more of the adverse results listed in the statute and briefly explain the need for the enlargement of the notice period. See Ex Parte Submission.[10] The Court is satisfied that the government made a sufficient showing under the statute to justify the extension.[11]

Claimants also argue that because the Khalils had actual knowledge of the seizures, the

---

[10] In response to claimants' contention that the agency "has no discretion . . . to depart" from the five enumerated factors (Cl. Mem. at 6; see also Cl. Reply at 5), the government correctly notes that by employing the word "including," Congress made clear in section 983(a)(1)(D) that the criteria are merely illustrative. See Govt. Mem. at 5 n.2; see also In re Sarex Corp., 509 F.2d 689, 691 (2d Cir. 1975) ("[T]he word 'including' is often used (and construed) as a term of enlargement, not of limitation.") (citing Am. Sur. Co. v. Marotta, 287 U.S. 513, 517 (1933)). In any event, as shown in the government's ex parte submission, the application and approval in this case were based on enumerated criteria.

[11] Claimants contend that the Court must conduct an evidentiary hearing to determine whether the DEA followed its own procedures. See Cl. Mem. at 8-9. However, as the government observes, there are no disputed issues of fact to be resolved. See Govt. Mem. at 18; see also 10/23/06 Letter to Judge Gershon from Sharon L. Kegerreis, Esq., at 2 (stating that claimants' motions "involve pure [] questions of statutory interpretation"). The internal DEA documents submitted by the government have been reviewed by the Court and obviate the need for an evidentiary hearing.

7

government's criminal investigation could not have been jeopardized by its providing formal notice. See Cl. Mem. at 8. Claimants' assumption is legally and factually flawed. Nothing in the statute precludes a delay in notice on this ground. Indeed, Congress recognized that even after formal notice has been provided, the filing of the complaint could itself "jeopardize a criminal investigation." H.R. REP. NO. 105-358(I) (1997) (hereinafter "1997 House Report") at *44.[12] Contrary to the factual premise of claimants' argument, the seizure of funds during a traffic stop reveals nothing about the nature or scope of the government's investigation, or even that a federal investigation is underway.[13]

Finally, claimants take issue with the government's characterization of the kind of risk sufficient to delay notification under the statute. The government contends that an extension is warranted where it is able to demonstrate "the risk of an adverse result if the civil forfeiture process were to begin and the government were required to disclose the identity of witnesses and investigative techniques." Govt. Mem. at 8. Claimants respond that the risk identified by the government is too attenuated from the adverse results contemplated by the statute; according to claimants, an extension is not justified simply because sending notice would start

---

[12] Both sides rely on the 1997 House Report, which discusses proposed legislation similar to that which was enacted as section 983. See generally Govt. Mem. at 12; Cl. Reply at 2, 10.

[13] Moreover, the legislature history of CAFRA suggests that where, as here, a person has actual knowledge of a seizure, he may be precluded from seeking to set aside a forfeiture under section 983(e) based on defective notice. See 1997 House Report at *43 ("The claimant could not seek relief under this section if, notwithstanding the defect in the government's compliance with the notice provision, the claimant had actual notice of the seizure from some other source, or was actually present when the property was seized and knew that it would be forfeited.") (citing United States v. One 1987 Jeep Wrangler Auto., 972 F.2d 472, 482 (2d Cir. 1992); Lopes v. United States, 862 F.Supp. 1178, 1188 (S.D.N.Y. 1994)); see also H.R. Rep. No. 106-192 (1999) (hereinafter "1999 House Report") at *22 (forfeiture may not be voided for lack of written notice where "the person otherwise had actual notice of the seizure.").

8

the clock running on the government's obligation to file a civil forfeiture complaint, followed thereafter by civil discovery and exposure of its investigation. See Cl. Reply at 5–6. However, Congress was well aware that the filing of a detailed civil forfeiture complaint could jeopardize an ongoing investigation, see 1997 House Report at *44, and the statute thus does not contain the limitation that claimants propose. This Court declines to read that limitation into CAFRA.

## II. Filing of Forfeiture Complaint

The second major prong of claimants' attack on the government's forfeiture claims concerns the deadline for filing the complaint itself. By filing with the seizing agency a timely claim for the property, the person whose property was seized may effectively transform the administrative seizure into a judicial proceeding. See 18 U.S.C. § 983(a)(2)–(3). Within ninety days of the filing of such a claim, the government must either file a civil forfeiture complaint in federal court, secure a criminal indictment, or return the property pending the filing of the civil complaint. See id. § 983(a)(3)(A)–(B). If the government fails to file its complaint or secure an indictment within the statutory time frame, the government must return the property to its owner and may not take further action to effect its civil forfeiture. See id. § 983(a)(3)(B). However, "a court in the district in which the complaint will be filed may extend the period for filing a complaint for good cause shown or upon agreement of the parties." Id. § 983(a)(3)(A).

### A. The Ex Parte Application

Claimants argue that the forfeiture claims must be dismissed because the government failed to comply with the statutory deadline for filing its civil complaint. Claimants construe

9

the statute to prohibit a court from extending the filing deadline in response to an ex parte application. See Cl. Mem. at 10. Specifically, they infer that because certain sections of CAFRA expressly authorize ex parte submissions, and section 983(a)(3)(A) does not, Congress must not have intended to authorize the government to apply ex parte for a filing deadline extension. See Cl. Mem. at 10.[14] The government likewise engages in statutory construction but concludes otherwise, reasoning that if Congress had intended to require that claimants be notified of such an application, it would have included an explicit notice provision, as it did in other sections of CAFRA. See Govt. Mem. at 13–14. Neither party has cited any cases construing section 983(a)(3)(A),[15] although other courts have addressed this precise issue – with opposite results. Compare United States v. Funds in the Amount of Fifteen Thousand Dollars ($15,000), No. 05 C 3572, 2006 WL 1049663, at *2 (N.D. Ill. Apr. 20, 2006) (denying claimant's motion to unseal ex parte motions for extension under section 983(a)(3)(A), which, "because of the secret nature of grand jury proceedings, . . . were justly filed *ex parte* and under seal."), with United States v. All Funds In Credit Suisse Private Banking Account, No. CV 05-3910 ABCMKCX, 2005 WL 5250030, at *6 (C.D. Cal. Sept. 20, 2005) (hereinafter "Credit Suisse") (dismissing, as time barred, government's forfeiture claims against certain properties, on the ground that "*ex parte* relief is not available under § 983(a)(3)(A).").

---

[14] Claimants also suggest that CAFRA does not "permit the government to extend the filing deadline in advance . . . ." Cl. Mem. at 10. However, nothing in the statute or in logic limits the government to applying for extensions nunc pro tunc.

[15] The government cites three cases for the proposition that no notice is required in the absence of an express notice requirement, but none of those cases involved CAFRA. See Govt. Mem. at 13.

In interpreting the statute, the Court first examines its language. See United States v. Razmilovic, 419 F.3d 134, 136 (2d Cir. 2005) ("Statutory construction begins with the plain text and, if that text is unambiguous, it usually ends there as well."). Section 983(a)(3)(A) provides that

> Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture . . ., except that a court in the district in which the complaint will be filed may extend the period for filing a complaint for good cause shown or upon agreement of the parties.

18 U.S.C. § 983(a)(3)(A).

The section does not expressly authorize the court to extend the filing deadline in response to an ex parte application by the government. Nor does it expressly impose a notice requirement on the party applying for the extension. Thus, the language of the statute appears equally susceptible to the competing interpretations advanced by the parties. Because claimants and the government each rely on a plausible reading of section 983(a)(3)(A), the Court looks to canons of statutory interpretation to help resolve the ambiguity. See United States v. Dauray, 215 F.3d 257, 262 (2d Cir. 2000).

### 1. *Statutory Structure*

"A statute is to be considered in all of its parts when construing any one of them." Id.; see also id. at 262 ("[T]he meaning of doubtful terms or phrases may be determined by reference to their relationship with other associated words or phrases . . . ."). "In other words, the preferred meaning of a statutory provision is one that is consonant with the rest of the statute." Auburn Hous. Auth. v. Martinez, 277 F.3d 138, 144 (2d Cir. 2002). Claimants

assert, without specific citation, that "other provisions of CAFRA specifically provide for *ex parte* submissions." Cl. Mem. at 10. The government responds that "other CAFRA provisions" include notice requirements. Gov. Mem. at 14.

The Court begins its analysis with an examination of other subsections within section 983. In doing so, the Court focuses on those provisions that involve government applications for judicial relief prior to the initiation of formal judicial proceedings. Once a civil complaint has been filed, service of court filings is ordinarily required, unless the motion is one that "may be heard ex parte . . . ." Fed. R. Civ. P. 5(a). Therefore, Rule 5(a) obviates the need for statutory language requiring notice to claimants once a forfeiture action has been commenced.

Apart from subsection 983(a)(3)(A), section 983 contains only two other subsections that concern government applications to a court prior to the initiation of formal judicial proceedings. See 18 U.S.C. § 983(a)(1)(C), (j)(1)(B). The first such provision, section 983(a)(1)(C), allows the government to seek and obtain a judicial extension of the deadline for sending notice to interested parties, provided that the conditions in section 983(a)(1)(D) are present.[16] Section 983(a)(1)(C) is silent as to whether the government may move for such an

---

[16] Section 983(a)(1)(C) provides:

> Upon motion by the Government, a court may extend the period for sending notice under subparagraph (A) for a period not to exceed 60 days, which period may be further extended by the court for 60-day periods, as necessary, if the court determines, based on a written certification of a supervisory official in the headquarters office of the seizing agency, that the conditions in subparagraph (D) are present.

(continued…)

extension on an ex parte basis. Nevertheless, it cannot reasonably be argued that the government is therefore precluded from doing so; to engraft a notice requirement onto section 983(a)(1)(C) would defeat the very purpose of that provision, which is intended to authorize a delay in notice where there is reason to believe that notice to interested parties may have an adverse result. See 18 U.S.C. § 983(a)(1)(D). Consequently, the language and purpose of subsection (a)(1)(C) undermine claimants' argument that absent explicit statutory authorization of ex parte applications, the Court should infer a notice requirement under CAFRA.

One other provision of section 983 concerns government applications for judicial relief prior to the initiation of a court action. See 18 U.S.C. § 983(j)(l)(B). That provision – in contrast to subsections (a)(3)(A) and (a)(1)(C) – incorporates an explicit notice requirement; specifically, subsection (j)(1)(B) provides that "[u]pon application of the United States, the court may enter a restraining order or injunction . . . if, after notice to persons appearing to have an interest in the property and opportunity for a hearing, the court determines that" certain conditions are met. 18 U.S.C. § 983(j)(1)(B). As this language suggests, with respect to applications that precede the commencement of formal judicial proceedings, CAFRA's drafters did not view the absence of express authorization to proceed ex parte as sufficient to impose a notice requirement on the government. Consequently, where section 983 is silent regarding notice, and the service requirement of Rule 5(a) does not apply, no notice requirement may be inferred.

Looking beyond section 983 to the other statutory sections comprising CAFRA, only

---

[16](…continued)
18 U.S.C. § 983(a)(1)(C). (Subsection (a)(1)(D) is reproduced at page 7 of this opinion.)

section 981(b)(4)(A) offers some superficial support for claimants' position, in that it expressly authorizes the government to apply ex parte to the court prior to filing a forfeiture complaint. That provision states that

> If any person is arrested or charged in a foreign country in connection with an offense that would give rise to the forfeiture of property in the United States . . ., the Attorney General may apply to any Federal judge or magistrate judge in the district in which the property is located for an ex parte order restraining the property subject to forfeiture for not more than 30 days . . . .

18 U.S.C. § 981(b)(4)(A).

The apparent disparity between sections 981 and 983 can be readily reconciled. To the extent that section 983(j)(1)(B) prohibits the government from applying to restrain property, without notice and the opportunity to be heard, prior to the filing of a forfeiture complaint, section 981(b)(4)(A) operates to remove the notice and hearing requirement where the property owner's presence in a foreign country – perhaps even in the custody of foreign authorities – would make such a requirement unduly burdensome. As this case does not involve an application for a restraint on property, the government was under no obligation to provide notice of its application for an extension of the filing deadline. Therefore, its ex parte motion did not violate section 983.

This Court respectfully rejects the reasoning of the Central District of California in Credit Suisse, 2005 WL 5250030, a case cited by neither party or, for that matter, any other court. Credit Suisse held that section 983(a)(3)(A) does not permit ex parte extensions. First, the court contrasted that statutory provision with subsection 983(f)(4), which expressly

authorizes the government to "submit evidence ex parte" in response to a claimant's petition for the return of seized property. See id. at *5 (citing 18 U.S.C. § 983(f)(4)). However, as previously noted, once a civil action has commenced, Rule 5(a) requires service of all court filings, unless the motion is one that "may be heard ex parte . . . ." Fed. R. Civ. P. 5(a). Consequently, section 983(f)(4) authorizes ex parte submissions that, by virtue of Rule 5(a), would otherwise have to be served on the claimants. In contrast, Rule 5(a) does not apply to a motion under 983(a)(3)(A), which predates the commencement of a civil action. Hence, section 983(f)(4)'s authorization of ex parte submissions does not support the court's interpretation of section 983(a)(3)(A) in Credit Suisse.[17]

The Credit Suisse opinion additionally relied on the legislative history of section 983 to buttress its conclusion that "Congress meant to withhold the availability of *ex parte* relief under § 983(a)(3)(A)." Credit Suisse, 2005 WL 5250030, at *5. Specifically, the court noted that, unlike the final draft of section 983, an earlier draft had expressly permitted the government to obtain ex parte extensions of the filing period. See id. at *5-6 (citing Bill to Reform Civil Asset Forfeiture, and for Other Purposes, S. 1701, 106th Cong. § 5 (1999)). The court therefore inferred that Congress "intentionally excised" that language in order to eliminate authorization for ex parte applications. See id. at *6.

As an initial matter, for the reasons detailed earlier in this opinion, an analysis of the language and structure of other portions of CAFRA eliminates any ambiguity in the text of

---

[17] Another provision in CAFRA authorizes the government to "submit evidence ex parte" in support of a motion to stay discovery in a previously filed forfeiture action. 18 U.S.C. § 981(g)(5). For the reasons discussed above, that provision is likewise distinguishable from section 983(a)(3)(A).

section 983(a)(3)(A) as to the permissibility of ex parte applications. Where, as here, a court resolves a seeming ambiguity through interpretation of the statutory language, it need not consult the statute's legislative history. See Gottlieb v. Carnival Corp., 436 F.3d 335, 341 (2d Cir. 2006).

In any event, the 1999 House Report is silent as to the reason why the explicit language authorizing ex parte applications was dropped from the final draft of CAFRA. See 1999 House Report at *22. The legislative history thus sheds no light on the motivation for that change. Perhaps Congress concluded that the language was surplusage and that its inclusion might create the need to redraft other sections of the statute. Alternatively, the drafters may have decided that the language authorizing ex parte applications was too restrictive.[18] If, as the court in Credit Suisse assumed, Congress had intended to require that section 983(a)(3)(A) applications be served on interested persons, it could simply have included language such as appears in section 983(j)(1)(B), which mandates notice of applications for restraining orders. See 18 U.S.C. § 983(j)(1)(B). In short, even if this Court were to consider the legislative history of section 983(a)(3)(A), it would not draw the inference that Congress intended to prohibit ex parte applications.[19]

---

[18] The prior version of section 983(a)(3)(A) provided in relevant part that "[i]f the reason for the extension is that the [notice of seizure] would jeopardize an ongoing criminal investigation or prosecution or court-authorized electronic surveillance, the application may be made ex parte." See 1997 House Report at *3.

[19] In view of this Court's interpretation of section 983(a)(3)(A), it need not address the government's reliance on courts' "inherent authority to conduct proceedings under seal and without notice to interested parties when the release of information in the proceeding may negatively affect an ongoing law enforcement investigation." Govt. Mem. at 15–16.

B. "Good Cause"

Claimants also argue that, even if the filing deadline may be extended on the basis of an ex parte application, the government did not proffer sufficient grounds upon which Judge Dearie could grant the application. See Cl. Mem. at 10–12; Cl. Reply at 7–11. Section 983 authorizes an extension by the District Court upon a showing of "good cause," which the statute does not define. See 18 U.S.C. § 983(a)(3)(A). Claimants cite two cases to support their argument that "good cause" should be narrowly interpreted and limited to include only situations in which the government failed to file a forfeiture complaint due to a clerical error, see United States v. $39,480.00 in U.S. Currency, 190 F.Supp.2d 929, 932 (W.D. Tex. 2002), or a misunderstanding of the procedure to be followed, see Hammoud v. Woodard, No. 05-74222, 2006 WL 381642, at *4 (E.D. Mich. Feb. 17, 2006). See Cl. Reply at 9. However, those cases involved situations in which the government had allowed the statutory deadline to pass without either filing a complaint or seeking an extension. Here, in contrast, the government timely requested an extension based on the necessity of protecting an ongoing investigation. Moreover, neither the caselaw nor the language of section 983(a)(3)(A) restricts its applications to curing inadvertent errors by the government.

Claimants additionally argue that inasmuch as section 981(g) of CAFRA authorizes the court to stay a civil forfeiture proceeding in order to prevent harm to a related criminal investigation, that justification "would not constitute 'good cause' for an extension [of the filing deadline] because the statute already provides ample protection for a criminal investigation *after* the forfeiture complaint has been filed." Cl. Reply at 8 (citing 18 U.S.C. §

17

981(g)). Therefore, claimants contend, the government should have filed its complaint by the statutory deadline and then promptly sought a stay of discovery under section 981(g) in order to protect its criminal investigation. See id.

Contrary to claimants' assumption, when Congress intended to limit or guide courts' discretion in rendering rulings under section 983, it inserted specific standards in the statutory language. See 18 U.S.C. § 983(a)(1)(C)–(D) (factors to be considered by district court in determining whether to extend the notice deadline); id. § 983(b)(1)(B) (factors for court to consider in determining whether to appoint counsel due to the financial need of a party to a civil forfeiture action); id. § 983(g)(1)–(4) (factors for court to consider in determining whether a forfeiture is "constitutionally excessive"); id. § 983(j)(1)(B) (standard for court to apply in determining whether to order restraint of property prior to the filing of a forfeiture complaint). In contrast, section 983(a)(3)(A) simply states, without limitation, that the court "may extend the period for filing a complaint for good cause shown." Id. § 983(a)(3)(A).

Faced with unconditional language in section 983, claimants infer from section 981(g)'s stay provision that Congress did not intend to allow an extension of CAFRA's filing deadline in order to protect an ongoing criminal investigation. See Cl. Mem. at 10–12; Cl. Reply at 7–11.[20] To the contrary, the stay provision in section 981 provides yet another example of congressional incorporation of a specific standard for the guidance of judicial discretion.[21] A

---

[20] Yet claimants elsewhere state that once a claim is filed, the government has "somewhat greater flexibility" in obtaining an extension of the filing (as opposed to the notice) deadline. Cl. Reply at 6.

[21] Section 981 authorizes the court to stay discovery in a civil forfeiture case at the

(continued…)

comparison of the two provisions thus suggests that Congress intended to grant courts involved in civil forfeiture proceedings at least as much discretion in extending filing deadlines as in staying discovery.[22] This Court is not persuaded that, having provided one form of protection for a criminal investigation in section 981, Congress intended to remove that as a consideration in section 983(a)(3)(A).

Moreover, CAFRA's legislative history undermines claimants' argument. Although the 1997 House Report observes that "an extension should not be granted merely to allow the government additional time to conduct its investigation," 1997 House Report at *44, it makes clear that the court is entitled to take steps to avoid premature disclosure of sensitive investigatory matters: "[T]he court should grant an extension of time where the filing of the complaint, which is required to recite the factual basis in some detail, would reveal facts concerning a pending investigation, undercover operation, or court-authorized electronic surveillance, or would jeopardize government witnesses." Id. (footnote omitted). The Report further notes that, in so doing, "the court would make it unnecessary for the government . . . to file a complaint and then immediately request a stay under Rule 26, Federal Rules of Civil Procedure, or under other statutory authority, to avoid jeopardizing a criminal case." Id. at *45.

---

[21](…continued)
government's request if the court determines that discovery "will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case." 18 U.S.C. § 981(g)(1).

[22] There are of course constitutional limits to that discretion, but those are not addressed in this motion. See generally Memorandum and Order [of this Court], dated December 11, 2006.

Consequently, this Court concludes that the extension granted by Judge Dearie was supported by a showing of good cause,[23] and this aspect of claimants' motion is likewise unavailing.[24]

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that claimants' motion for relief under CAFRA be denied without an evidentiary hearing.

Any objections to the recommendations contained herein must be filed with the Honorable Nina Gershon by May 14, 2007. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 982 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to docket this Report and Recommendation through the Electronic Case Filing System.

**SO ORDERED.**

**Dated:**     **April 30, 2007**
             **Brooklyn, New York**

                                      **ROANNE L. MANN**
                                      **UNITED STATES MAGISTRATE JUDGE**

---

[23] To be sure, the government has redacted those portions of its submission to Judge Dearie that contain its showing of good cause. See Gov. Mem. at 15 n.5. This Court has, however, reviewed an unredacted copy of that document, and is satisfied that the extension granted by Judge Dearie was based on good cause. See Sealed AUSA Decl. at ¶¶ 11, 15.

[24] The government also implies, without response from claimants, that whatever the validity of the extension, the government relied in good faith on Judge Dearie's order and thus should not be penalized. See Govt. Mem. at 16; see generally United States v. Reilly, 76 F.3d 1271, 1273 (2d Cir. 1996) (citing United States v. Leon, 468 U.S. 897, 922 (1984)) (good faith exception to warrant requirement). In view of the Court's statutory analysis, it need not reach this issue.